DELAVAL SEPARATOR COMPANY

*vs.*

LAWRENCE V. JONES, et als.

Trustees in Bankruptcy of Maine Creamery Association.

Penobscot.     Opinion February 18, 1918.

*Conditional sales.   Mortgages of personal property.   Recording of mortgages and conditional sales.   Holmes notes.   Right of bona fide purchaser of mortgaged property without notice and bona fide purchaser of property sold under contract of conditional sale.*

This case comes up on the following agreed statement of facts:

Trover for the conversion of a DeLaval Cream Separator.   July 13, 1915, plaintiff delivered to said Maine Creamery Association the separator in question upon a conditional sale agreement embodied in three several conditional sale notes payable respectively October 1, 1915, December 1, 1915 and February 1, 1916.

The last two notes were properly recorded January 3, 1916.   On January 13, 1916 the creamery association filed a petition in bankruptcy and the defendants in due course of time were appointed and qualified as trustees.

The question is, are these so-called Holmes notes within the purview of the statute which provides that any mortgage of personal property executed after the United States Bankruptcy Law should go into effect should not be valid against a trustee unless the mortgage is recorded within ten days after the date thereof?

*Held:*

(1)   The provisions of this statute was not intended and does not apply to the recording of a Holmes note.

(2)   The plaintiff's sale is not invalid for want of record under the ten day provision.

Action of trover to recover the value of a cream separator delivered the company of which the defendants were trustees in bankruptcy. The separator was delivered to the company under an agreement that the title was not to pass until notes representing the purchase price had been paid.   The case was reported to the Law Court upon certain agreed statements and stipulations.   Judgment for plaintiff in accordance with opinion.

Case stated in opinion.

*Ryder & Simpson,* for plaintiff.

*Morse & Cook,* for defendants.

SITTING: CORNISH, C. J., SPEAR, KING, BIRD, HANSON, JJ.

SPEAR, J.   This case comes up on the following agreed statement of facts.

Trover for the conversion of a DeLaval Cream Separator.   July 13, 1915, plaintiff delivered to said Maine Creamery Association the separator in question upon a conditional sale agreement embodied in three several conditional sale notes payable respectively October 1, 1915, Dec. 1, 1915 and Feb. 1, 1916, of like tenor with the following:

"$200.00                         Bangor, Maine, July 13, 1915.

On the 1st day of October, 1915 for value received, I promise to pay to the order of the DeLaval Separator Company two hundred and no-100 Dollars, with 6 per cent interest, at the (bank) Eastern Trust and Banking Co. of Bangor, Maine.   This note is given for DeLaval Cream Separator, Style No. 60 Serial No. 1,587,850.

"The express condition of the sale and purchase of said machine and the giving of this note (or notes) to secure the full payment therefor is that the title, ownership or possession does not pass from the said payee or his (or their) assigns, to the maker of this note (or notes) or his (or their) assigns, until all notes have been fully paid and satisfied; and the drawers and endorsers severally waive presentment, protest and notice of protest and non-payment of this note.

No. 1.                                   MAINE CREAMERY ASS'N
P. O. Address.. .. ..........            By J. D. McEDWARD, Treas."

The note last due was never recorded and is not in issue in this case. The other two notes were recorded in the City Clerk's office in Bangor, Maine, where by law they were required to be recorded, Jan. 3, 1916 at 2.15 P. M.   On Jan. 13, 1916, said Maine Creamery Association duly filed in the U. S. District Court for the District of Maine its petition to be adjudicated a bankrupt, and defendants were in due course duly appointed and qualified as trustees of its estate in bankruptcy.

The first question to determine is whether the instrument showing the transaction between these parties is a personal mortgage or a conditional sale. This question was specifically considered in *Campbell* v. *Atherton*, 92 Maine, 69, in this language: "We are of the opinion that the transaction in question cannot be regarded as a mortgage. By the terms of the contract the title remained in the Atkinson Company. Kelley was to have no title to the property until he should have paid the full amount stipulated in the contract. *Having no title to the property, Kelley could give no mortgage to the party owning the same.*" Accordingly, whatever the language of the decision of our court, holding that a sale, manifested by what is usually termed a Holmes note, is in the nature of a personal mortgage, the conclusion is nevertheless inevitable that in the whole course of our law upon this question is found a fundamental distinction which differentiates a mortgage, as security, from the Holmes note, as security. The mortgage conveys title to the vendee which may be defeated by payment by the vendor: the Holmes note retains title in the vendor, which may be defeated by payment by the vendee. This distinction has been emphasized by legislation, at least, since 1839, when personal mortgages were required to be recorded to be valid, except as between the parties thereto. In 1839 by the Public Laws, Chapter 398, Section 5, personal mortgages were required to be recorded to be valid except as between the parties thereto. But conditional sales were not regarded as coming within the purview of this statute. The fundamental difference continued, as is shown by the repeated construction of our court, holding the title of personal property, under an unrecorded mortgage, upon sale by the mortgagor, vested title in a bona fide purchaser, without notice; while the title to personal property upon a sale by the terms of which the vendor retained title in himself, does not vest in a bona fide purchaser, without notice. Up to 1874 this class of sales, to be valid against all parties, was not required to be recorded. But this year the legislature passed an act found in the Public Laws of 1874, Chap. 181, Sec. 5, by the provisions of which, at that time, only a note of more than thirty dollars was required to be recorded.

In the Public Laws of 1891, Chapter 11, a further amendment was made to R. S., Chapter 111, the language of which is significant in its apparent purpose to note the difference between a personal mortgage and conditional sale, namely: "No agreement that personal

property, bargained and delivered to another, for which a note is given, shall remain the property of the payee until the note is paid, is valid unless it is made and signed as a part of the note;" and then not valid except between the original parties, "unless it is recorded like mortgages of personal property."

It is not because these amendments are made to Chapter 111, instead of the chapter relating to personal property, which is important as showing the legislative intent to continue the distinction between personal mortgages and conditional sales, but the design of the language employed to give expression to the amendment found in Chapter 111 of the laws of 1891. It does not say that "no sale of personal property," but "no agreement" of sale, shall be valid unless recorded. A mortgage is a sale, to the extent of carrying title, not an agreement to sell. A Holmes note is an agreement to sell, and conveys no title. This is a fundamental distinction and has always been so regarded by the courts. The legislature in its recording statutes, undoubtedly intended to maintain this distinction; hence the recording statute applying to mortgages was not intended and does not apply to the recording of a Holmes note, nor any other instrument of a similar nature. The plaintiff's sale, therefore, is not invalid for want of record, under the ten day provision.

The statute relating to the record of personal mortgages, with all amendments incorporated, is now found in R. S., Chapter 96; while the statute relating to the record of agreements to sell personal property, with all amendments incorporated, is found in R. S., Chapter 114. The former statute, among other things, provides that any mortgage of personal property executed after the United States Bankruptcy Law should go into effect, should not be valid against a trustee unless and until possession was taken, or a mortgage recorded within ten days after the date thereof. But, as already seen, this statute does not apply to the recording of a Holmes note. Hence the trustee in bankruptcy in this case gains no advantage of title to the personal property involved by failure of the plaintiff claiming title therein to record his notes within ten days.

The notes in question, however, were recorded before the creamery Association was adjudicated bankrupt. Hence the question, was the sale manifested by these notes, in any other respect, in violation of the United States Bankruptcy Act? The sale was made and these notes dated July 13, 1915. The Creamery Association was adjudi-

cated a bankrupt January 13, 1916.    The transaction was six months before the adjudication of bankruptcy, and the notes recorded before the adjudication.

1.    These notes, having been recorded prior to the filing of the petition in bankruptcy, are valid as against these defendants as trustees in bankruptcy.    U. S. Bankruptcy Act, Section 47a, as amended in 1910.    *In re Kuse,* 234 F., 470.    *In re Marriner,* 220 F., 542, (Dist. of Maine).    *In re Farmers' Co-Operative Co.,* 202 F., 1005.

2.    Neither are they voidable preferences under the bankruptcy act.    U. S. Bankruptcy Act, Section 60, as amended in 1903 and 1910. *Carey* v. *Donohue,* 240 U. S., 430, 437.    *Hawkins* v. *Dannenbury Co.,* 234 F., 752.    *Debus* v. *Yates,* 193 F., 427.    (a)    Because these Holmes notes do not constitute a transfer by the bankrupt of any of his property.    *Campbell* v. *Atherton,* 92 Maine, 69.    *Lane* v. *Borland,* 14 Maine, 81.    *Motor Car Co.* v. *Hamilton,* 113 Maine, 63.    *Guth Piano Co.* v. *Adams,* 114 Maine, 390.    *Nichols* v. *Ashton,* 155 Mass., 205. *In re Farmers' Co-Operative Co.,* 202 F., 1005.    *Big Four Implement Co.* v. *Wright,* 207 F., 536.    *Baker Ice Machine Co.* v. *Bailey,* 209 F., 603.    *Kebbee* v. *John Deere Plow Co.,* 190 F., 1019.    *Claridge* v. *Evans,* (Wis.) 118 N. W., 198.    *John Deere Plow Co.* v. *Edgar Farmer Store Co.,* (Wis.) 143 N. W., 194.    *Bailey* v. *Baker Ice Machine Co.,* 239 U. S., 268.    (b)    Because there is nothing to show that the Maine Creamery Association was insolvent on January 3rd, 1916, when these notes were recorded.    *In re Chappell,* 113 F., 545.    *Kimball* v. *Dresser,* 98 Maine, 519.

While the decision of this case undoubtedly depends upon whether the notes here involved should have been recorded under R. S., Chapter 96, relating to the record of personal mortgages, or under R. S., Chapter 114, relating to agreements of sale, and is discussed only upon this ground by the defendants in their brief, we have, nevertheless, briefly alluded to the reasons why the notes as recorded are not rendered invalid by any of the provisions of the bankruptcy act. In accordance with the stipulation in the agreed statement, the entry must be,

*Judgment for the plaintiff for $400 and costs.*