**In the Matter of MERRYMEETING PRODUCTS CORPORATION, Bankrupt.**

**No. 7410 Inv.**

United States District Court
D. Maine, N. D.
March 14, 1956.

———◆———

Irving Isaacson, Lewiston, Me., for petitioner.

Francis A. Finnegan, Bangor, Me., for assignee of conditional sales contract.

CLIFFORD, District Judge.

This matter comes before this Court upon a petition for review filed by the Trustee in Bankruptcy. The Trustee seeks review of the order of the Referee in Bankruptcy which sustained the validity of a conditional sales contract, given by the bankrupt, on the ground that it was properly recorded. The question presented is whether the conditional sales contract was properly recorded in accordance with Me.R.S.1954, Chapter 119, § 9,[1] so as to be valid against the Trustee in Bankruptcy.

1.—Me.R.S.1954, Chapter 119, § 9—
"Agreement that goods sold and delivered to remain the property of the seller;

record; * * *.—No agreement, that personal property * * * shall remain the property of the seller till paid for,

No question was raised as to any of the facts found by the Referee. The bankrupt, Merrymeeting Products Corporation, was organized for the purpose of conducting a poultry processing business. Its certificate of organization recited that the principal office of the corporation was in Camden, Knox County, Maine. On December 29, 1954, nearly all of its business activity was carried on in Morrill, Waldo County, Maine. The only corporate activity conducted in Camden consisted of corporation meetings held at the law offices of the Corporate Clerk.

On December 29, 1954, the bankrupt executed and delivered to Arctic Refrigeration Service, Inc., a conditional sales contract for certain refrigeration equipment. This contract was thereafter assigned to Merchants National Bank of Bangor and was recorded in the office of the Town Clerk of Morrill in Waldo County on January 19, 1955. It was not recorded in Camden in Knox County, the place designated in the articles of incorporation as the location of the company's principal office. The equipment was installed in bankrupt's plant in Morrill.

On June 2, 1955 an involuntary petition in bankruptcy was filed. At the time of such filing, a substantial balance remained due on the conditional sales contract. The Merchants National Bank (hereinafter referred to as vendor) filed a petition to reclaim the equipment which was the subject of the contract, and this petition was allowed by the Referee.

The arguments of both vendor and Trustee are directed to the meaning of the word "resides" as used in the conditional sales statute. Vendor contends that a corporate vendee, within the statute, resides at its principal established

place of business; thus Morrill was the proper place for record. Trustee asserts that the residence of a corporation is that location designated in its articles of organization; and that such designation is conclusive for purposes of the conditional sales statute; thus, the recording in Morrill was ineffective as against the Trustee in Bankruptcy.

The issue before this Court then is: What is the residence of a domestic corporate vendee under the conditional sales act? Since no Maine case has been discovered which decisively resolves this point, it is necessary to search out such guides in the well-reasoned Maine opinions and legislative enactments, as may assist this Court in its determination.

The Referee based his determination on two cases, Hill v. Gerber, 1 Cir., 1928, 24 F.2d 514, and Emerson Co. v. Proctor, 1903, 97 Me. 360, 54 A. 849. The Emerson case is clearly distinguishable on its facts. A domestic corporation purchased goods on a conditional sales agreement from a Maryland vendor. The agreement was never recorded. While Maryland law did not require recording for conditional sales, the law of Maine did. In determining the place where the contract was made, the case held that it was deemed to have been executed at the place where the last act necessary to complete it was done. The last act having been performed in Maine, Maine law applied. Accordingly, the agreement was invalid as to third parties. By resolving the conflict in laws question, and determining that "purchaser" included corporations, the Court effectively disposed of the issue before it.

■ However, the Court went beyond the immediate issue and upon referring to R.S.1883, Chapter 111, § 5 as amended by 1895 Laws of Maine, Chapter 32, (which is now R.S.1954, Chapter 119, §

is valid * * * unless it * * * is recorded in the office of the clerk of the city, town or plantation organized for any purpose, in which the purchaser resides at the time of the purchase; but if any

of the purchasers are not residents of the state * * * then in the registry of deeds in the county where the seller resides at the time of the sale. * * * "

9) declared in 97 Me. on page 362, 54 A. on page 850:

"* * * We think it was also intended that they should be recorded; that a corporation, within the meaning of that section, 'resides' in that town in which it has its established place of business. Prior to 1895 this section required such agreements to be 'recorded like mortgages of personal property,' and mortgages of personal property made by a corporation must be recorded in the town where it has its established place of business. * * * No reason can be assigned why it should not apply to such agreements when made by a corporation as purchaser, as well as when made by any other person. The act of 1895 required them to be in writing and signed, and the Legislature, when it used the word 'resides,' did not intend to change the existing law in regard to recording, but did intend that the terms should embrace corporations which have an established place of business in this state, as well as those persons who, more strictly speaking, reside here."

The statement concerning the residence of a corporation was not necessary for the decision on the facts before that court, and is not controlling on the facts before this Court.

The vendor contends that this dictum should be considered as authoritative. Such a construction, which was adopted by the Referee, imports an express provision of the chattel mortgage statute [2] into the conditional sales statute. This ignores the principle set forth in the later case of Delaval Separator Company v. Jones, 1918, 117 Me. 95, 102 A. 968, 969. After tracing the historical and doctrinal distinctions existing between mortgages and conditional sales, the court in that case stated:

"The Legislature in its recording statutes, undoubtedly intended to maintain this distinction; hence the recording statute applying to mortgages was not intended and does not apply to the recording of a Holmes note, nor any other instrument of a similar nature."

Comparing the two statutes, it is manifest that the Legislature provided for distinct methods of recording. Consideration of legislative history reveals that conditional sales agreements were "recorded like mortgages of personal property" until 1895. Subsequently, conditional sales agreements were to be recorded where the "purchaser resides". P.L.1895, Chapter 32; see also Boscho, Inc., v. Knowles, 1951, 147 Me. 8, 83 A.2d 122. The fact that the Legislature chose to enact a new statute, and in terms unequivocally different from the prior recording statutes, emphasizes the distinction between residence and "established place of business." In the face of Delaval and the construction that has been utilized by the Maine courts in interpreting these statutes, see Mac Motor Sales, Inc., v. Pate, 1952, 148 Me. 72, 90 A.2d 460, for a strict, literal construction, this Court cannot disregard the differences existing in the language used

2. Me.R.S.1954, Chapter 178, § 1—"Mortgages of personal property; record.—No mortgage of personal property shall be valid * * * unless * * * recorded within the said period of 20 days in the office of the clerk of the city, town or plantation organized for any purpose, in which the mortgagor resides when the mortgage is given, or registry of deeds as hereinafter provided. When all mortgagors reside without the state, the mortgage * * * shall be so recorded in the office of the register of deeds in the registry district where the property is when the mortgage is made; but if a part of the mortgagors reside in the state, then in the cities, towns * * * in which such mortgagors reside when the mortgage is given. * * * A mortgage * * * made by a corporation shall be so recorded in the city, town or plantation where it has its established place of business, and, if said corporation has no established place of business in the state, * * * then in the office of the register of deeds for the registry district in which such property is when the mortgage is made."

by the Legislature. These are separate statutes, notwithstanding the similarity in their purpose, and will not be construed with reference to each other.

Considered in this light, the case of Hill v. Gerber, supra [24 F.2d 516], becomes impertinent. That case involved a chattel mortgage made by a domestic corporation. The corporation had several places of business within the county where its location was fixed by its articles of organization. In defining " 'established place of business'," the court held that the principal established place of business in fact was the proper place of record. Consistent with the chattel mortgage statute, Hill v. Gerber does not utilize the concept of residence, rather it deals solely in terms of established place of business. Consequently, it has no application to a case involving a conditional sales agreement.

 It is clear that a corporation has a residence that remains fixed in the state of its creation, although it may carry on business in another state. Squire & Co. v. Portland, 1909, 106 Me. 234, 76 A. 679, 30 L.R.A.,N.S., 576; Hammond Beef & Provision Co. v. Best, 1898, 91 Me. 431, 40 A. 338, 42 L.R.A. 528. It follows that no amount of business done away from the state which created it can operate to change its legal residence. Chafee v. Fourth National Bank of N. Y., 1880, 71 Me. 514. Further, it is generally established that the residence of a domestic corporation is at the location of its principal office unless a statute otherwise directs. Guterman v. Rice, 1 Cir., 1941, 121 F.2d 251. Although there is no Maine statute which specifically designates the location of the residence of a corporation within the state, there are various sections under the chapter dealing with the organization of corporations which treat them as being "located" in a particular county.[3]

Acceptance of the vendor's contentions would lead to conclusions which would be in conflict with this decisional and statutory authority. Residence, especially insofar as corporations are concerned, has the connotation of a fixed location. If "resides" is intended to be

---

3. Under the subheading of "Organization under Special Act" of Chapter 53 of Revised Statute of Maine, 1954, appears:
"Sec. 5. Certificate of organization.—Before commencing business, the president * * * shall prepare a certificate setting forth * * * the name of the county where it is located * * *. Such certificate shall be recorded in the registry of deeds in the county where its principal office is to be located. * * *"
Under the subheading of "Organization under General Law" of Chapter 53, Revised Statutes of Maine, 1954, appears:
"Sec. 10. Certificate of organization; fees.—Before commencing business the president * * * shall prepare a certificate setting forth * * * the name of the county where it is located * * * and after said certificate has been * * certified to be properly drawn * * * it shall be recorded in the registry of deeds in the county where said corporation is located * * *." (Emphasis supplied.)
Under other subheadings of the same chapter appear:
"Sec. 36. Certificate of election of clerk; attested copy of evidence.—Whenever there is a change in the office of clerk of a corporation, the clerk shall * * * file a certificate of his election in the registry of deeds in the county or district where the corporation is located or where it has a place of business or a general agent; * * *."
"Sec. 41. Contents; filed.—Every corporation incorporated under the laws of this state * * * shall, * * * annually, make a return to the secretary of state * * * the location of its principal office in this state * * *."
"Sec. 79. Change of location; certificates filed in registries of deeds.—Any corporation organized under this chapter * * * may change its location from one county to another in the state, and the corporation shall file * * * in the registry of deeds in each of said counties, within 20 days after such change of location, the certificate required by section 36."
"Sec. 80. Certificate of every change filed with secretary of state.—Whenever a corporation shall make a change in its charter or certificate of organization, in any manner, for the more convenient transaction of its business, it shall forward a notice of such change to the secretary of state * * *."

synonymous with "principal established place of business," then the residence of a domestic corporation with several places of business operations will vary in location depending upon which place is in fact the principal place of business. Conversely, if a domestic corporation has no established place of business, in the state, vendor's logic would compel the conclusion that a domestic corporation has no residence for purposes of the recording statute. Further, a foreign corporation having an established place of business in Maine would, under such a construction of the statute, become a resident of Maine.

Although a Legislature cannot successfully anticipate every possible situation which might arise, certainly, the general words of a statute should be reasonably interpreted. Admittedly, "residence" is a flexible word, its meaning governed by the purpose and context of the statute. But this Court will not give it a meaning that the word will not bear. Nor may it impute to the Legislature the intent to depart or ignore the requirements of the decisions clearly set forth by Maine courts, above. See Wilson v. Wilson, 1947, 143 Me. 113, 120, 56 A.2d 453.

■ This Court believes that the residence of a domestic corporation, within the meaning of the conditional sales statute, is that location designated in the articles of organization. And, as several other jurisdictions have held, the residence fixed by the articles of organization is conclusive. Fairbanks Steam Shovel Co. v. Wills, 1916, 240 U.S. 642, 36 S.Ct. 466, 60 L.Ed. 841; Sweeny v. Keystone Driller Co., 1920, 122 Ohio St. 16, 170 N.E. 436; First National Bank of Everett v. Wilcox, 1913, 72 Wash. 473, 130 P. 756, 131 P. 203; In re Riverdale Production, D.C.S.D.N.Y. 1952, 107 F. Supp. 87; Buckner-Weatherby Co. v. Wuest, 167 Wash. 647, 9 P.2d 1104; cf. Guterman v. Rice, 1 Cir., 1941, 121 F.2d 251. The statutory requirements that the location be stated in the articles of organization, and the specific provisions for change and for the recording of the same were for the purpose of fixing a definite legal residence of the domestic corporation within the state about which there could be no question. The articles were to be conclusive as to this residence, at least for purposes necessitating a definite fixed place where creditors of the general public could have the assurance of finding recorded that information which the Legislature has determined they are entitled to have. This rule fixes a definite residence for the corporation which can be changed effectively only in accordance with the appropriate statutory provisions, R.S.1954, Chapter 53, §§ 41, 79 and 80. See Guterman v. Rice, 1 Cir., 1941, 121 F.2d 251. This effectively carries out the purpose of the conditional sales statute which is to protect all persons who have any interest in examining the record title to property of which they may become owners. Motor Finance Company v. Noyes, 1942, 139 Me. 159, 28 A.2d 235. Also since certainty and promptness are characteristics basic and necessary to commercial transactions, the construction here applied is one best designed to fulfill these requirements.

Although there is no requirement that a corporation designate in its articles of organization the town or city within the county where it is located, nevertheless, where a corporation does include that information, it is conclusive as to its residence within the county. A recital of this information is clearly indicative of the intention of the corporate officers as to the precise residence of the corporation. And since Camden, Knox County, Maine, is the place designated by the corporation in its articles of organization as the location of its principal office, that is the corporation's residence for the purposes of the conditional sales statute. Consequently, where the conditional sales agreement in question was not recorded in Camden, but in a place located in a county other than Knox, it is invalid as against the Trustee in Bankruptcy.

It is therefore Ordered, Adjudged and Decreed that the order of the Referee in Bankruptcy, dated August 26, 1955, which directed the Trustee to surrender certain specified personal property to the Merchants National Bank of Bangor be and hereby is reversed and the matter remanded to the Referee in Bankruptcy for further proceedings not inconsistent with this order and opinion.